UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN ADMIRALTY

ATLANTIC SPECIALTY INSURANCE COMPANY,

    Plaintiff,

v.

MYI INTERNATIONAL, LLC dba FLORIDA YACHTS INTERNATIONAL,

    Defendant.

CASE NO.

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Atlantic Specialty Insurance Company, through its undersigned counsel, sues Defendant, MYI International, LLC dba Florida Yachts International, for declaratory relief and in support thereof, states as follows:

**The Parties and Jurisdiction**

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1333 as a matter of Admiralty and Maritime Jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, as well as 28 U.S.C. § 2201, Declaratory Judgments.

3. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b).

4. All conditions precedent to the filing of this action have occurred or have been complied with.

CASE NO.

- 2 -

5. At all times material, Plaintiff, Atlantic Specialty Insurance Company ("ASIC"), is a New York corporation with its principal place of business in Minnesota. ASIC is authorized to do business in the State of Florida.

6. The Defendant, MYI International, LLC, dba Florida Yachts International ("MYI"), owns and operates a boat dealership located in Miami, Florida.

7. At all material times, ASIC had in existence a Marina Package Program policy of insurance, policy, number B5JH26603 ("the Policy"), naming MYI as an insured. The Policy is attached hereto as Exhibit "A".

8. This matter arises from a claim submitted by MYI to ASIC after a vessel allegedly owned by MYI and operated by Captain Humberto Merlo, the M/Y BLUE OCEAN ("M/Y BLUE OCEAN" or the "Vessel"), allided with pilings, which caused damage to a third party vessel, the M/Y Nirvana.

9. The incident occurred when the M/Y BLUE OCEAN was departing from its slip at or near 2550 Bayshore Drive, Suite 2, Miami, FL 33133 on or about February 15, 2017 (the "Incident").

10. The Incident occurred on the navigable waters of the United States and is within this Court's admiralty jurisdiction.

**The Policy**

11. The Policy was effective from October 2, 2016 to October 2, 2017 and contains, in pertinent part, the following provisions:

**Coverage Section II**

*Protection and Indemnity*

    **1. Coverage**

CASE NO.

Subject to the General Exclusions from Coverage (Section IX) and the General Conditions of Coverage (Section X), this Coverage Section insures the legal liability of the Insured arising from the ownership or operation of watercraft otherwise insured under either Coverage Sections I (Marina Operators Legal Liability), IV (Boat Dealers Insurance), or VIII (Owned Watercraft Insurance), but only if shown on the Schedule of Owned Watercraft of this Policy for the sums the Insured becomes legally liable to pay with respect to:

1.1 Watercraft operated by the Insured or a competent "employee" of the insured in conjunction with normal business operations;

\*   \*   \*

**2.  Exclusions from Coverage**

Notwithstanding the above, this policy does not cover:

\*   \*   \*

2.9 Any liability, loss, damage, or expense arising from the failure of the Insured to have a competent "employee" at all times in charge of any watercraft being navigated for the purpose of demonstration, delivery, testing or transport;

\*   \*   \*

**Coverage Section III**

*Commercial General Liability*

\*   \*   \*

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I - COVERAGE**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will

- 3 -

have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But . . .

\* \* \*

**2. Exclusions**

This insurance does not apply to:

\* \* \*

**g. Aircraft, Auto Or Watercraft**

"Bodily Injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

\* \* \*

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and
  **(b)** Not being used to carry persons or property for a charge.

\* \* \*

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

\*   \*   \*

c. You and any other involved insured must:

\*   \*   \*

> (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; . . . .

\*   \*   \*

## Coverage Section IV
## Boat Dealers Insurance

**1. Coverage**

Subject to the General Exclusions from Coverage (Section IX) and the General Conditions of Coverage (Section X), this Coverage Section insures against all risks of direct physical loss of, or damage to, the property described below from any external cause, except as provided in the Exclusions hereto.

**2. Property Covered**

This insurance covers all private pleasure boats, boat trailers, marine engines, marine supplies, accessories and parts owned by the Insured and held for sale.

**3. Property Not Covered**

The coverage provided hereunder shall not apply:

\*   \*   \*

3.2  To property held by the Insured for purposes of storage, consignment or repair.

3.3  While any boat is being navigated other than for the purpose of demonstration, delivery, testing or transport.

3.4  To property leased by others or sold by the Insured under an installment plan, conditional sale, mortgage or similar arrangement.

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

CASE NO.

\* \* \*

### 4. Demonstration, Delivery, Testing and Transport Warranty

Whenever a boat insured under this Coverage Section is being navigated for the purpose of demonstration, delivery, testing, or transport, it is warranted that this Coverage Section shall be void unless:

4.1  The Insured or a competent "employee" of the Insured is at all times in charge of navigation.

\* \* \*

### Section X

### General Conditions of Coverage
### Applicable to All Coverage Sections

\* \* \*

### 9. Protection of Property and Cooperation of the Insured

\* \* \*

The Insured shall cooperate with the Company and upon the Company's request shall aid in securing information, evidence, obtaining of witnesses and in all other matters which the Company may deem necessary in respect to any occurrence as hereunder provided.

\* \* \*

### 24.  Definitions

"Employee" means any person working in the business of the Insured or any company related or affiliated with the Insured and who is compensated for their time and who receives a W-2 or 1099 from the insured.  This definition does not apply to any liability arising under Coverage Section III, Commercial General Liability.

### Claim and Investigation

12. On or about February 15, 2017, the M/V BLUE OCEAN, an 85' Aicon motor yacht, was involved in an allision with a docked boat, the M/V NIRVANA.

13. On or about March 16, 2017, MYI made a claim under the Policy issued by ASIC.

14. ASIC initially assigned the claim to Paul Prebe, a claims adjuster. On March 17, 2017, Mr. Prebe communicated with Karen Parker, MYI's attorney, and sought information as to the owner of the M/V BLUE OCEAN, the relationship of Captain Merlo to MYI, and the purpose of the M/V BLUE OCEAN's trip at the time of the Incident.

15. On March 28, Mr. Prebe renewed his request for information.

16. On March 31, 2017, Ms. Parker responded by providing "specs" for the Vessel but did not affirmatively identify the owner, did not explain the relationship of Captain Merlo to the insured, MYI, and stated affirmatively that "the boat trip was for pleasure."

17. As a result of the information provided by MYI's counsel, on April 6, 2017, ASIC issued a reservation of rights letter.

18. After issuing the reservation of rights letter, ASIC received an email from Anthony Ruidiaz, MYI's insurance broker, advising that the information regarding the use of the Vessel was a mistake because "the insured was not aware [of] how to classify the trip."

19. Following Mr. Ruidiaz's email, ASIC appointed an investigator to investigate the Incident. The investigation revealed that, as early as 2014, MYI may have been offering the M/V BLUE OCEAN for charter.

20. On May 11, 2017, attorneys for ASIC corresponded by letter with Ms. Parker, advising that only vessels owned by MYI receive coverage under the Policy and requesting that proof of ownership, including a copy of the Certificate of Documentation, be forwarded to ASIC's counsel.

21. No proof of ownership documents were submitted in response to the May 11, 2017 correspondence.

CASE NO.

22. Based on MYI's failure to cooperate, on June 16, 2017, attorneys for ASIC forwarded an amended Reservation of Rights letter to MYI advising that ASIC was reserving all rights as to coverage under the Policy and exercising its right to take a Statement Under Oath.

23. MYI was advised in the June 16, 2017 correspondence of the following areas of inquiry for the Statement Under Oath:

   a) Ownership of the boat.
   b) Florida Yachts' relationship to the boat.
   c) Use of the boat at the time of the loss.
   d) Names and addresses of all persons on board the boat at the time of the loss.
   e) Identity of the person the boat was being demonstrated for at time of loss.
   f) Contacts between Florida Yachts and the person identified in Paragraph [e] above.
   g) Captain Merlo's relationship with Florida Yachts.
   h) Captain Merlo's experience operating boats such as the one in question.
   i) Efforts by Florida Yachts to sell or charter the boat.

24. In that same correspondence, MYI was advised that it was required to bring the following documents to the Statement Under Oath:

   a) All documents reflecting ownership of the boat including any Bills of Sale for the vessel or Certificates of Documentation.
   b) Customs documentation regarding the boat, including any documents submitted to clear the boat through customs and/or pay duty on the boat.
   c) All listing, sale, or consignment agreements for the boat.
   d) All advertisements for the sale of the boat.
   e) All advertisements for the charter of the boat.
   f) Your entire file on the boat.
   g) Your entire file for Captain Humberto.
   h) Any 1099 or W-2 given to Captain Humberto at any time.
   i) Captain Humberto's license.
   j) Any insurance certificates covering Captain Humberto in the operation of boats.
   k) Documents evidencing the identity of the person for whom the boat was allegedly being demonstrated.
   l) All communications, including emails or notes of telephone conversations with the person identified in Item [k] above.
   m) Your customer file for the person identified in Item [k] above.

- 8 -

CASE NO.

25. In response to the document requests, MYI initially produced a purported Independent Contractor's Agreement with Captain Merlo and a Bill of Sale for the Vessel.

26. ASIC sent additional emails requesting the documents and dates for the Statement Under Oath, but MYI did not respond to these requests.

27. In March 2018, ASIC was advised that suit was going to be filed against MYI by the insurers for the M/Y Nirvana in the United States District Court for the Southern District of Florida entitled *National Union Fire Insurance Company of Pittsburg PA v. M/Y BLUEOCEAN, et al.* ("the Litigation").

28. As a result of receipt of a draft of the Complaint intended to be filed in the Litigation, on April 9, 2018, an amended reservation of rights letter was sent to MYI.

29. As a result of the threatened Litigation by the insurers of the M/Y Nirvana, ASIC appointed defense counsel for MYI under a full reservation of rights.

30. Finally, on April 26, 2018, MYI produced Ralph Navarro, the manager of MYI, as its representative for the Statement Under Oath.

31. At the Statement Under Oath, Mr. Navarro provided another copy of the Bill of Sale as proof of ownership of the M/Y BLUE OCEAN.

32. Notwithstanding the Bill of Sale, when asked to provide a copy of the Official Document for the Vessel, the document produced identified the owner of the Vessel as Black River Partners IV LLC of Park, City, Utah, not MYI. The official abstract from the National Vessel Documentation Center also identifies Black River Partners IV LLC as the owner of the Vessel.

33. At the Statement Under Oath, Mr. Navarro refused to produce a 1099 confirming Captain Merlo's status as an "employee" under the terms of the Policy. While a copy of what

purported to be a 1099 was shown to counsel for ASIC, MYI refused to have a copy of the 1099 made or even have a redacted copy attached to the Statement Under Oath as an exhibit.

34. At the Statement Under Oath, Mr. Navarro was unable to testify what the Vessel was being used for or who was on board the Vessel at the time of the Incident. He further testified that he had made no efforts to determine the use of the Vessel or who was on board the Vessel at the time of the Incident in the ten months since the Statement Under Oath was first requested in ASIC's June 2017 reservation of rights letter. When asked how he would determine how the Vessel was being used at the time of the Incident, Mr. Navarro testified that he would talk with Captain Merlo.

35. At the Statement Under Oath, Mr. Navarro also testified that the MYI had severed its relationship with Captain Merlo. Yet when ASIC attempted to contact Captain Merlo, he advised that he had been instructed by Mr. Navarro that he was not to discuss the Incident with anyone other than Mr. Navarro and that Mr. Navarro and MYI's attorney must be present.

36. Therefore, even though by MYI's own testimony the best way to determine how the Vessel was being used at the time of the Incident was to talk to Captain Merlo, and even though MYI had severed its ties with Captain Merlo, MYI was intentionally impeding ASIC's investigation into coverage by demanding that Captain Merlo not discuss this matter except in the presence of Mr. Navarro and MYI's attorney.

37. At the Statement Under Oath, Mr. Navarro further testified that the MYI did not operate a charter business (a non-covered use) until the summer of 2017. However, as alleged above, and upon information and belief, the Vessel was held out for charter by Defendant as early as 2014.

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

CASE NO.

38. On May 25, 2018, ASIC was finally permitted to take the Statement Under Oath of Captain Merlo.

39. Captain Merlo testified that he was employed as a full time Captain for the M/V BLUE OCEAN at the time of the Incident. He indicated that some of his salary was paid directly by MYI and some by Cesar Omana, who Captain Merlo called the "owner" of the Vessel. Upon information and belief, Mr. Omana has not official capacity with MYI other than possible as an "investor."

40. Captain Merlo testified further that the vast majority of times he operated the Vessel was for pleasure trips for Mr. Omana and his family.

41. Captain Merlo also testified that on the day of the Incident, he had been asked by Mr. Omana to use the Vessel for "demonstration" purposes. The passengers were Mr. Omana's father and the father's female companion. Mr. Omana's father had been on the Vessel before.

## Coverage

42. Coverage Section IV of the Policy, Boat Dealers Insurance, is not a liability coverage provision. Instead, Section IV provides coverage for damage to the vessel itself.

43. Coverage under the Policy for the insured's legal liability to others, if any, must therefore arise under either Section II, Protection Indemnity, or Section III, Commercial General Liability.

44. Coverage Section II of the Policy, Protection and Indemnity, Paragraph 1, provides, in part: "Subject to the General Exclusions from Coverage (Section IX) and the General Conditions of Coverage (Section X), this Coverage Section insures the legal liability of the Insured arising from the ownership or operation of watercraft" otherwise insured under Coverage Section IV, Boat Dealers Insurance. Therefore, a condition of coverage under Section

II of the Policy is that the vessel is otherwise insured under Coverage Section IV, Boat Dealers Insurance.

45. There are no provisions of Section III of the Policy, General Liability, which would provide coverage for this incident

46. In order for coverage to exist under the Boat Dealers Insurance, three conditions must be met. First, the boat must be owned by the Insured (Coverage Section IV, Paragraph 2). Next, at the time of the loss, the boat must have been operated for the purpose of demonstration, delivery, testing or transport (Coverage Section IV, Paragraph 3.3.) Finally, at the time of loss, the boat must be operated by "the Insured or a competent 'employee' of the Insured." (Coverage Section IV, Paragraph 4.1).

47. The documentation provided to date, as well as the official records from the National Vessel Documentation Center, and the testimony of Captain Merlo all indicate that the M/Y BLUE OCEAN was not owned by MYI at the time of the Incident.

48. The information received, originally from MYI's counsel and confirmed by Captain Merlo to ASIC's investigator, further indicated that the M/Y BLUE OCEAN was not being used for demonstration, delivery, testing or transport at the time of the Incident and instead was being used for "pleasure." Notwithstanding his contrary earlier advices to ASIC's investigator, at his statement under oath Captain Merlo specifically used the term "demonstration" when describing purpose for the trip on the day of the Incident. The supposed "demonstration" was for the "owner's" father, who had previously been on the Vessel for family outings, and his female companion. Because of the prior contrary statements by MYI's attorney and Captain Merlo as well as the prior experience of the "owner's" father being on the Vessel for

purely family pleasure trips, and there is an issue as to whether this was actually a "demonstration" as required for by Coverage Section IV, Boat Dealers Insurance.

49.     Finally, there is a question whether, at the time of the Incident, Captain Merlo was acting as an "employee" of MYI. While he was a full time captain for the M/V BLUE OCEAN, he was paid partially by MYI and partially by Mr. Omana. In light of MYI's refusal to produce any pay records for Captain Merlo, including a W-2 or 1099, it is impossible to determine whether he was an "employee" as defined in the Policy at the time of the Incident.

50.     As a result, ASIC is unclear as to its rights and obligations under the Policy and requires a declaration as to the existence or non-existence of coverage.

## COUNT I – DECLARATORY RELIEF

51.     ASIC hereby incorporates by reference and restates paragraph 1- 50 stated above as if fully stated herein and further alleges that:

52.     MYI's intentional failure to disclose the necessary information for ASIC to determine if the Incident falls within the scope of the Policy during the claim investigation process constitutes a material breach of the Policy, which has resulted in a substantial prejudice to ASIC.

53.     Based on its own investigation and MYI's failure to produce adequate information during the claims investigation process, it is ASIC's position that, at the time of the Incident, Captain Merlo was not an "employee" under the definition in the Policy, and therefore, the loss is not covered by the Policy.

54.     Based on its own investigation and MYI's failure to produce adequate information during the claims investigation process, it is further ASIC's position that the M/Y BLUE

CASE NO.

OCEAN was not being used for demonstration, delivery, testing or transport use at the time of the Incident, and therefore the loss is not covered by the Policy.

55. Based on its own investigation and MYI's failure to produce adequate information during the claims investigation process, it is also ASIC's position that the M/Y BLUE OCEAN was not owned by Defendant at the time of the Incident, and therefore the loss is not covered.

56. ASIC has and continues to be substantially prejudiced by MYI's failure to disclose and participate in the claims investigation process, a prejudice which MYI was aware of during the claims investigation process through the present.

57. Insurers of the M/Y Nirvana have requested the posting of security in lieu of arrest of the M/Y BLUE OCEAN. In light of the existence of the coverage issues, ASIC is unsure of its obligations under the Policy and requires a declaration from the Court as to the same.

58. As a result of the threatened litigation, ASIC has appointed defense counsel for M/Y BLUE OCEAN in the other pending litigation. In light of the existence of the coverage issues, ASIC is unsure of its obligations under the Policy and requires a declaration from the Court as to the same.

59. An actual, present and justiciable controversy exists between ASIC and Defendant MYI warranting the entry of declaratory judgment by this Court.

WHEREFORE, Atlantic Specialty Insurance Company requests that this Court enter judgment on its Complaint for Declaratory Judgment against Defendant as follows:

1. For a judicial determination that the February 15, 2017 Incident involving the M/Y BLUE OCEAN is not covered by Policy No. B5JH26603, including,

CASE NO.

without limitation Coverage Section II, Protection and Indemnity, Coverage Section III, General Liability, or Coverage Section IV, Boat Dealers Insurance;

2. For a judicial determination that ASIC has no obligation to provide a defense to MYI in *National Union Fire Insurance Company of Pittsburg PA v. M/Y BLUEOCEAN, et al.*;

3. For a judicial determination that there is no obligation to post security in lieu of arrest of the M/Y BLUE OCEAN in *National Union Fire Insurance Company of Pittsburg PA v. M/Y BLUEOCEAN, et al.*; and

4. For such other relief as the Court deems appropriate, including judgment for all costs.

Dated: June 15, 2018

Respectfully submitted,

/s/ James N. Hurley
James N. Hurley
Fla. Bar No. 354104
Email: jhurley@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201